USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/27/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
FONZ, INC.,                                                :
                                                           :        19-CV-10854 (LJL) (RWL)
                                  Plaintiff,               :
                                                           :     **REPORT AND RECOMMENDATION**
              - against -                                  :        **TO HON. LEWIS J. LIMAN:**
                                                           :        <u>**DAMAGES INQUEST**</u>
CITY BAKERY BRANDS, LLC, et al.,                           :
                                                           :
                                  Defendants.              :
-------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

This is a breach of contract case in which Plaintiff seeks relief from Defendants for defaulting on a secured promissory note and guarantee. By orders dated January 21, 2021 and July 7, 2021, the Honorable Lewis J. Liman, U.S.D.J., granted a default judgment against Defendants and referred this matter to me to conduct an inquest on damages. For the reasons set forth below, I recommend that the Court award Plaintiff (a) $1,297,509.54 in damages inclusive of accrued interest, (b) prejudgment interest at the statutory rate of 9% as calculated by the Clerk of Court, (c) $27,640.50 in reasonable attorneys' fees, and (d) $1,075 in costs.

## FACTS[1]

Plaintiff Fonz Inc. ("Plaintiff") is a joint-stock company organized under the laws of Japan. (Compl. ¶ 2, Yoshii Decl. ¶¶ 2, 6.) City Bakery Brands, LLC ("CBB"), The City

---

[1] The facts are drawn from the Complaint ("Compl."), Dkt. 1; Plaintiff's Proposed Findings Of Fact And Conclusion of Law ("FFCL"), Dkt. 45; and the Declaration Of Takuya Yoshii ("Yoshii Decl."), Dkt. 45-1, and accompanying exhibits.

Bakery, LLC ("TCB"), and Maurybakes, LLC (collectively, the "Defendants"[2]) are limited liability companies that operated a retail café and bakery and provided catering and wholesale services until 2019, when operations ceased.  (Compl. ¶¶ 3-5, Yoshii Decl. ¶ 6.)  Plaintiff operates and manages several City Bakery-branded restaurants in Japan. (Compl. ¶ 2, Yoshii Decl. ¶ 6.)

On July 13, 2018, Plaintiff provided a $200,000 loan to TCB as working capital for TCB to use to repay outstanding obligations to various lenders that had provided the company short-term secured financing.  (Compl. ¶¶ 9, 12, Yoshii Decl. ¶ 9, 10.)  The loan was made pursuant to a promissory note under which TCB committed to repay the loan with interest, accrued at a rate of 15% per year, on September 30, 2018.  (Compl. ¶ 9, Yoshii Decl. ¶ 9.)  TCB's obligations under the note were secured pursuant to a security agreement entered into by Plaintiff, TCB, and CBB, which granted Plaintiff a security interest in certain trademarks owned by TCB and CBB.  (Compl. ¶ 10, Yoshii Decl. ¶ 9.) CBB and former defendant Maury Rubin executed a guaranty on July 13, 2018 under which they guaranteed the loan as primary obligors.  (Compl. ¶ 11, Yoshii Decl. ¶ 9.) Under the note, TCB was not to assume any new debt or incur any liens on any of its assets that were subject to the security agreement.  (Compl. ¶ 12, Yoshii Decl. ¶ 10.)

Between August 29, 2018 and October 10, 2018, Plaintiff provided additional funding totaling $350,000.  The loans were made under the same terms as the July 2018 note.  (Compl. ¶ 13-14, Yoshii Decl. ¶ 11.)  On November 21, 2018, Plaintiff extended

---

[2] On January 21, 2020, the Chapter 7 Trustee for former defendant Maury Rubin filed a notice of bankruptcy.  (Dkt. 15.)  On July 29, 2020, the Court stayed the action with respect to Maury Rubin, and Maury Rubin was voluntarily dismissed from the action on July 7, 2021.  (Dkt. 40.)

another $540,000 under a promissory note, dated November 21, 2018, with identical terms as the previous note and a maturity date of December 10, 2018.  (Compl. ¶ 17, Yoshii Decl. ¶ 12.)  CBB's obligations under the November 2018 note were secured by first priority security interest in all of CBB's assets, with some limited exceptions.  (Compl. ¶ 19, Yoshii Decl. ¶ 13.)   Another guaranty was executed on November 20, 2018. (Compl. ¶ 20, Yoshii Decl. ¶ 13.)

Neither CBB nor any of the guarantors made payments on the maturity date, and the Plaintiff served notices of default and demanded payment.  (Compl. ¶ 21, Yoshii Decl. ¶ 14.)   Following Defendants' request to extend the maturity date and ensuing negotiations, the parties entered into a new promissory note on February 27, 2019 (the "Note").[3]  Pursuant to the Note, the 2018 notes were exchanged for a single consolidated note with a maturity date of June 13, 2019, issued by CBB for the principal amount of $1,167,175.  By a separate but related agreement, TCB, Maurybakes, and Maury Rubin each guaranteed payment of the Note (the "Guaranty").[4]  A security agreement granted Plaintiff a security interest in almost all of CBB's, TCB's and Maurybakes' assets, with certain exceptions (the "Security Agreement").[5]  (Compl. ¶ 22-23, Yoshi Decl. ¶ 15-19.)

Defendants failed to repay the Note as required; Plaintiff served notices of default and demanded turnover of collateral.  (Compl. ¶ 25-26, Yoshii Decl. ¶ 21.)  Plaintiff offered to accept turnover of the collateral, pursuant to the Security Agreement, in full satisfaction of the outstanding amount due, but Defendants rejected this offer.  (Compl. ¶ 27.)  To

---

[3] Secured Promissory Note Agreement, attached as Ex. 1 to the Yoshii Decl.

[4] Guaranty, attached as Ex. 3 to the Yoshii Decl.

[5] Security Agreement, attached as Ex. 2 to the Yoshii Decl.

date, $1,167,175 in principal and $130,334.54 in accrued interest is outstanding on the Note.[6]  (Compl. ¶ 28, Yoshii Decl. ¶ 22.)

## PROCEDURAL HISTORY

Plaintiff commenced this action on November 22, 2019.  (Dkt. 1.)  Neither party attended a pretrial conference scheduled for August 25, 2020; the conference was rescheduled for September 30, 2020, and only Plaintiff's counsel attended.  (Dkts. 20, 21.)  Following the conference, on October 2, 2020, the Court issued an order directing Plaintiff to move for default judgement by November 16, 2020 due to Defendants' failure to appear at the two conferences and respond to the Complaint.  (Dkt. 21.)  On November 16, 2020, Plaintiff filed a motion for default judgment against all Defendants.  (Dkt. 26.)  The Court granted the motion on January 21, 2021.  (Dkt. 34.)  On July 7, 2021, the Court referred the case to the undersigned for an inquest on damages.  (Dkt. 41.)

On July 8, 2021, this Court entered an order directing Plaintiff to file proposed findings of fact and conclusions of law and supporting documents by August 2, 2021, establishing the legal and factual bases for an award of damages.  (Dkt. 42.)  Following an extension request, Plaintiff filed the requisite papers and served them on the Defendants.  (Dkts. 45-46.)  Pursuant to the inquest scheduling order, any response to Plaintiff's inquest submission was due by August 16, 2021; none of the Defendants filed a response.

---

[6] The accrued interest on the Note is calculated based on the contractual interest rate of 15% from the date of the Note, February 27, 2019, to the date the Complaint was filed, November 22, 2019.  (Yoshii Decl. ¶ 22.)

**LEGAL STANDARDS**

When a defendant defaults, all well-pleaded facts alleged in the complaint, except those relating to the amount of damages, must be accepted as true.  *City Of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint" (internal quotations marks omitted)); *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (trial court is required to "accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in its favor"). "This principle applies regardless of whether default is entered as a discovery sanction or for failure to defend."  *Walpert v. Jaffrey*, 127 F. Supp.3d 105, 129 (S.D.N.Y. 2015) (internal quotation marks omitted).  The court may also rely on factual allegations pertaining to liability contained in affidavits and declarations submitted by the plaintiff. *See, e.g.*, *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993); *Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).  Nonetheless, the court "must still satisfy itself that the plaintiff has established a sound legal basis upon which liability may be imposed."  *Shld, LLC v. Hall*, No. 15-CV-6225, 2017 WL 1428864, at *3 (S.D.N.Y. April 20, 2017) (internal quotation marks omitted); *see Finkel*, 577 F.3d at 84.

Once liability has been established, a plaintiff must provide admissible evidence establishing the amount of damages with reasonable certainty.  *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Division Of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997); *see also Lenard v. Design Studio*, 889 F. Supp.2d 518, 527 (S.D.N.Y. 2012) (in an inquest following a default, "[a] plaintiff must … substantiate a claim with evidence to prove the extent of damages").

To assess whether the plaintiff has established a sufficient basis for damages, a court has the discretion, but is not required, to hold a hearing.  *See* Fed. R. Civ. P. 55(b)(2); *Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).  An inquest into damages may be conducted on the papers, without an evidentiary hearing where there is a sufficient basis on which to make a calculation.  *See Bricklayers & Allied Craftworkers Local 2, Albany, New York Pension Fund v. Moulton Masonry & Construction, LLC*, 779 F.3d 182, 189 (2d Cir. 2015)*; Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53-54 (2d Cir. 1993); *Maldonado v. La Nueva Rampa, Inc.*, No. 10-CV-8195, 2012 WL 1669341, at *2 (S.D.N.Y. May 14, 2012).  There is sufficient basis to do so here; no party has requested a hearing; and the Court has determined that none is needed.

### LIABILITY

Accepting the well-plead allegations of Plaintiff's Complaint as true, supplemented by the declarations of record, the Court finds that Plaintiff has established Defendants' liability for breach of contract, breach of guaranty, and foreclosure of personal property.

The Note and the Guaranty are governed by New York state law.  (Note § 12.3; Guaranty § 10.)  To prevail on a breach of contract claim under New York law, a plaintiff must establish four elements: (1) the existence of a contract; (2) the plaintiff's performance of that contract; (3) the defendant's breach of that contract; and (4) that the plaintiff suffered damages as a result of the breach.  *Terwilliger v. Terwilliger*, 206 F.3d 240, 246 (2d Cir. 2000) (applying New York law).  Plaintiff alleges the existence of a promissory note, security agreement, and guaranty related to the loan made to Defendants, all three dated February 27, 2019.  (Compl. ¶ 23.)  Plaintiff has provided

executed copies of each document (*see* Yoshii Decl. Exs. 1, 2, 3), and the Complaint pleads Plaintiff's adequate performance.  (Compl. ¶ 1, 13, 14, 17, 23.)

Plaintiff alleges that Defendants' failure to repay the loan in accordance with the loan documents resulted in economic harm, specifically deprivation of the $1,167,175 in principal and $130,334.54 in accrued interest owed to Plaintiff under the loan documents. Under the Note, a failure to pay any principal amount or interest when due for five consecutive days constitutes an event of default, which gives Plaintiff the right to "exercise any or all of its rights, powers or remedies under the Security Agreement or applicable Law."  (Note §§ 10.1, 11.)  Accepting Plaintiff's factual allegations as true, the Court finds that Plaintiff has sufficiently demonstrated the elements of liability necessary to establish a claim for breach of contract.

To succeed on a claim for breach of guaranty under New York law, a plaintiff must establish: (1) the underlying debt, (2) an unconditional guaranty, and (3) the guarantor's failure to perform under the guaranty.  *Chemical Bank v. Haseotes*, 13 F.3d 569, 573 (2d Cir. 1994); *Thor 725 8th Ave. LLC v. Goonetilleke*, 138 F. Supp.3d 497, 509 (S.D.N.Y. 2015), *aff'd*, 675 F. App'x 31 (2d Cir. 2017); *Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro*, 25 N.Y.3d 485, 492, 15 N.Y.S.3d 277, 277 (2015) (a guaranty is "subject to the ordinary principles of contract construction" and "[u]nder those principles, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (internal quotation marks omitted)).  Here, the February 2019 Guaranty "absolutely, unconditionally and irrevocably guarantees … the full and punctual payment and performance when due of all present and future obligations … under or relating to the [Note]."  (Guaranty § 1.)  The unpaid

principal and interest due on the February 2019 Note reflect the underlying debt, and Plaintiff has pleaded TCB's and Maurybakes' failure to perform under the February 2019 Guaranty. (*See* Compl. ¶¶ 23, 24, 28; Yoshii Decl. ¶¶ 19, 21, 22.) Accordingly, Plaintiff has established Defendants' liability for breach of guaranty.

Following a default, the New York Uniform Commercial Code permits a secured party, to "reduce a claim to judgment, foreclose, or otherwise enforce the … security interest … by any available judicial procedure." N.Y. U.C.C. § 9-601(a)(1). Upon default, a secured party's rights include the right to "take possession of the collateral." N.Y. U.C.C. § 9-609(a)(1). The relevant agreements here provide Plaintiff with the right to foreclose on the collateral securing the Note. If an event of default occurs, Plaintiff may, among other things, "take possession of the [c]ollateral without demand or legal process" or "sell, lease, or otherwise dispose of the [c]ollateral at any public or private sale in accordance with the law." (Security Agreement § 9.) An event of default includes CBB's failure to pay its obligation under the Note when due. (Note §§ 10.1.) Because Plaintiff has established CBB's failure to pay and consequent default, Plaintiff has demonstrated its right to foreclose on the collateral. *See, e.g.*, *Lehman Brothers Holdings Inc. v. Walji*, No. 09-CV-1995, 2011 WL 1842838, a *4 (S.D.N.Y. May 11, 2011) (granting Plaintiff's motion for summary judgment on its claims for breach of contract and foreclosure); *Christie's Inc. v. Davis*, 247 F. Supp.2d 414, 419 (S.D.N.Y. 2002) (under a note and security agreement, plaintiff was permitted to satisfy its debt by foreclosing on certain collateral).

Moreover, liability is established on all claims with respect to each Defendant – CBB as the Note issuer, and TCB and Maurybakes as guarantors. *See Banco Portugues Do Atlantico v. Asland, S.A.*, 745 F. Supp. 962, 967 (S.D.N.Y. 1990) (granting summary

8

judgment and finding guarantor liable for debt where party defaulted under a credit agreement and noting that under New York law, "after the meaning of the contract of guarantee has been determined according to the ordinary principles of contract construction, the obligations undertaken by the guarantor are to be strictly applied"); *Barclays Bank Of New York v. Goldman*, 517 F. Supp. 403, 412 (S.D.N.Y. 1981) (granting plaintiff bank's motion for summary judgment against guarantors of debts incurred by third-party defendant).

## DAMAGES

As Defendants' liability has been established, the Court turns to evaluating damages and other relief.   Plaintiff seeks: (1) breach of contract damages totaling $1,297,509.54 – consisting of $1,167,175 for the unpaid principal due under the Note and $130,334.54 in accrued interest; (2) prejudgment interest at a statutory rate of 9%; (3) attorneys' fees in the amount of $27,640.50; and (4) costs in the amount of $1,075. Plaintiff has provided sufficient evidence to support each of those items.

## A.    Breach of Contract Damages

The Court begins its analysis with the "fundamental principle that damages for breach of contract should put the plaintiff in the same economic position he would have been in had the defendant fulfilled the contract."   *Lucente v. International Business Machines Corp.*, 310 F.3d 243, 262 (2d Cir. 2002) (citing *Indu Craft, Inc. v. Bank Of Baroda,* 47 F.3d 490, 495 (2d Cir.1995)).   In New York, damages for a breach of contract claim based on a failure to pay is generally limited to recovery of the unpaid contract amount and accrued interest.   *See Arch Insurance Co. v. Precision Stone, Inc.*, 584 F.3d 33, 40-41 (2d Cir. 2009) ("In a typical breach of contract case, a non-breaching party is

entitled to the payment it is due under the terms of the contract, less the payment it has already received" (applying New York law)); *Scavenger, Inc. v. GT Interactive Software Corp.*, 289 A.D.2d 58, 58-59, 734 N.Y.S.2d 141, 142 (1st Dep't 2001) ("where the breach of contract was a failure to pay money, plaintiff should be limited to a recovery of the contract amounts plus appropriate interest").

Based on Plaintiff's submissions, the amount due under the Note is $1,167,175. (Compl. ¶¶ 23, 28; Yoshii Decl. ¶ 22; FFCL at 6; Note, Ex. A.)  In support of this claim, Plaintiff submits the Note specifying the principal amount of the loan, along with a spreadsheet indicating that Defendants have not made any payments and that the full principal amount remains outstanding.  (Note § 1 & Ex. A.)  Additionally, Takuya Yoshii, Plaintiff's Co-Representative Director, has stated under penalty of perjury that he has personal knowledge that $1,167,175.00 is the amount of outstanding principal owed to Plaintiff under the Note.  (Yoshii. Decl. ¶ 22.)

Plaintiff also seeks to recover damages for the unpaid interest on the outstanding principal, at an annual rate of 15%, accrued from February 27, 2019, the date the Note was executed, to November 22, 2019, the date the lawsuit commenced.  (Yoshii Decl. ¶ 22; FFCL at 6.)  The Court finds that Plaintiff is entitled to recover interest under the Note and that Plaintiff's proffered interest calculation is correct.[7]

---

[7] Under the Note, Defendants owe interest at a rate of 15% per annum on the outstanding balance of $1,167,175.  A period of 268 days elapsed from the date of execution of the Note to the commencement of this action.  A daily accrued interest amount of $486.32291 (calculated by applying the 15% rate to the outstanding principal amount and dividing that amount by 360, given that the Note specified that interest was to be calculated based on a 360-day year) yields a total accrued amount of $130,334.54 (rounded).

In short, Plaintiff is entitled to $1,167,175 in outstanding principal and $130,334.54 in accrued interest.

## B.   Prejudgment Interest

Plaintiff requests an award of prejudgment interest calculated at the New York statutory rate of 9% from the date of the start of this lawsuit through the date of entry of a final judgment.  (FFCL at 7; Yoshii Decl. ¶ 23.)  New York law provides that prejudgment interest "shall be recovered upon a sum awarded because of a breach of performance of a contract."   NY CPLR § 5001(a); *see also Spodek v. Park Property Development. Associates*, 96 N.Y.2d 577, 581, 733 N.Y.S.2d 674, 676 (2001) ("We hold that CPLR 5001(a) permits a creditor to recover prejudgment interest on unpaid interest and principal payments awarded from the date each payment became due under the terms of the promissory note to the date liability is established"); *NML Capital v. Republic Of Argentina*, 621 F.3d 230, 239 (2d Cir. 2010).  The statutory rate of prejudgment interest prescribed by New York law is 9%.  NY CPLR 5004.  Having established Defendants' breach of contract, Plaintiff is entitled to prejudgment interest at the requested statutory rate.[8]

---

[8] Although Plaintiff asks that prejudgment interest be imposed at the statutory 9% rate, there is some authority that supports imposing the higher contractual rate of 15%.  Under New York law, "when a contract provides for interest to be paid at a specified rate until the principal is paid, the contract rate of interest, rather than the legal rate set forth in CPLR 5004, governs until payment of the principal or until the contract is merged in a judgment."  *NYCTL 1998-2 Tr. v. Wagner*, 61 A.D.3d 728, 729, 876 N.Y.S.2d 522, 523 (2nd Dep't 2009) (internal quotation marks omitted); *see also NML Capital*, 621 F.3d at 240.  As Plaintiff has requested the statutory rate, however, the Court adopts that rate.

C.    **Attorneys' Fees**

Plaintiff seeks compensation for $27,640.50 in attorneys' fees.  (FFCL at 7; Yoshii Decl. ¶ 24.; Petrakov Decl. ¶ 8.[9])  New York law does not permit recovery of attorneys' fees for breach of contract absent a contractual provision stating otherwise.  *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003) ("Under the general rule in New York, attorneys' fees are the ordinary incidents of litigation and may not be awarded to the prevailing party unless authorized by agreement between the parties, statute, or court rule"); *Congel v. Malfitano*, 31 N.Y.3d 272, 291, 76 N.Y.S.3d 873, 884 (2018) ("Attorneys' fees are treated as incidents of litigation rather than damages" (internal quotation marks and citation omitted)).  Here, there is just such a contractual provision; the Note explicitly entitles Plaintiff to expenses and fees incurred in connection with enforcing the agreement.  (Note § 12.2.)

The traditional approach to determining a fee award is the "lodestar" calculation, which is the number of hours expended multiplied by a reasonable hourly rate.  *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007).  The Second Circuit has held that "the lodestar … creates a 'presumptively reasonable fee.'"  *Millea v. Metro-North Railroad Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Association v. County Of Albany*, 522 F.3d 182, 183 (2d Cir. 2008); and then citing *Perdue v. Kenny A. Ex Rel. Winn*, 559 U.S. 542, 552, 130 S. Ct. 1662, 1673 (2010)); *see also Stanczyk v. City Of New York*, 752 F.3d 273, 284-85 (2d Cir. 2014) (reaffirming *Millea*).  To arrive at a lodestar calculation, "[t]he party seeking an award of [attorneys'] fees should submit evidence supporting the hours worked and rates claimed."  *Hensley v. Eckerhart*,

---

[9] Declaration of Albena Petrakov ("Petrakov Decl."), Dkt. 45-5.

461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983).  Plaintiff has submitted such evidence here, including a declaration from counsel and copies of contemporaneous records of time expended by specific attorneys and paralegals.  (Petrakov Decl., Ex. A.)

**Hourly Rates:**  Courts assess the reasonableness of a proposed hourly rate by considering the prevailing market rate for lawyers in the district in which the ruling court sits.  *Polk v. New York State Department Of Correctional Services*, 722 F.2d 23, 25 (2d Cir. 1983).  "The rates used by the court should be current rather than historic hourly rates."  *Reiter v. Metropolitan Transportation Authority Of New York*, 457 F.3d 224, 232 (2d Cir. 2006) (internal quotation marks omitted).  "[C]ourts may conduct an empirical inquiry based on the parties' evidence or may rely on the court's own familiarity with the rates if no such evidence is submitted."  *Wong v. Hunda Glass Corp.*, No. 09-CV-4402, 2010 WL 3452417, at *2 (S.D.N.Y. Sept. 1, 2010) (internal quotation marks omitted). Additionally, "the range of rates that a plaintiff's counsel actually charges their clients … is obviously strong evidence of what the market will bear."  *Rozell v. Ross-Holst*, 576 F. Supp.2d 527, 544 (S.D.N.Y. 2008); *see also Lilly v. County Of Orange*, 910 F. Supp. 945, 949 (S.D.N.Y. 1996) ("The actual rate that counsel can command in the market place is evidence of the prevailing market rate").

Plaintiff is represented in this action by the law firm of Offit Kurman, P.A. and seeks reimbursement of fees for the work of three attorneys and one paralegal from that firm: Joyce Kuhns, who billed at an hourly rate of $495 for 2.6 hours; Albena Petrakov, who billed at an hourly rate of $400-420 for 59.7 hours; Laura Winston, who billed at an hourly rate of $380 for 2.8 hours; and paralegal Janet Mukherjee, who billed at an hourly rate of $150-175 for 7.8 hours.  (Petrakov Decl. ¶ 5.)

The Court recommends approval of the requested rates as they are well within the reasonable range of rates for experienced attorneys performing similar works, and the rates are similar to those this Court has previously approved.  *See, e.g.*, *Tabatznik v. Turner,* No. 14-CV-8135, 2016 WL 1267792, at *11-12 (S.D.N.Y. Mar. 30, 2016) (approving partner rate of $650 per hour and associate rate of $425 per hour, in action to enforce a promissory note); *Rubenstein v. Advanced Equities, Inc.*, No. 13-CV-1502, 2015 WL 585561, at *6-7 (S.D.N.Y. Feb. 10, 2015) (hourly rate of $525 was reasonable for partners with between 20 and 30 years' experience and that "blended" rate of $350 was reasonable for associates with experience ranging from one to nine years); *Weiwei Gao v. Sidhu*, No. 11-CV-2711, 2013 WL 2896995, at *6 (S.D.N.Y. May 7, 2013) (rate of $550 per hour was a reasonable rate for a breach-of-contract commercial litigation case where the attorney had primary responsibility for the matter), *R. & R. adopted*, 2013 WL 2896995 (S.D.N.Y. June 13, 2013).

The Court also has reviewed the qualifications of each individual for whom such rates are sought, as well as the roles played by each in this case, and finds the rates charged appropriate for attorneys of their background and experience.  (*See* Petrakov Decl., Ex. A.)  Accordingly, the Court finds the rates requested for Plaintiff's attorneys to be reasonable.

**Hours Worked:** To determine the compensable hours, "the Court must examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case."  *Tlacoapa v. Carregal*, 386 F. Supp.2d 362, 371 (S.D.N.Y. 2005) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 873, 876 (2d Cir. 1998)).  "In making this examination, the district court does not play the role of an uninformed arbiter

but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Gierlinger*, 160 F.3d at 876 (internal quotation marks omitted).  "The relevant issue … is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992); *see also Mugavero v. Arms Acres, Inc.*, No. 03-CV-5724, 2010 WL 451045, at *6 (S.D.N.Y. Feb. 9, 2010) (same).  A court thus should exclude from the lodestar calculation "excessive, redundant or otherwise unnecessary hours."  *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999); *see also Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997) ("If the district court concludes that any expenditure of time was unreasonable, it should exclude these hours from the lodestar calculation").

A prevailing party can recover fees for several categories of work, including failed efforts otherwise reasonably pursued.  *See, e.g.*, *Gortat v. Capala Brothers, Inc.*, 621 F. App'x. 19, 23 (2d Cir. 2015) ("there is no rule that [p]laintiffs need achieve total victory on every motion in pursuit of a successful claim in order to be compensated for the full number of hours spent litigating that claim"); *Ni v. Bat-Yam Food Services Inc.*, No. 13-CV-7274, 2016 WL 369681, at *8  (S.D.N.Y. Jan. 27, 2016) (awarding attorneys' fees for hours spent on discovery, discovery-related motions, failed settlement negotiations, and summary judgment motions); *Easterly v. Tri-Star Transportation Corp.*, No. 11-CV-6365, 2015 WL 337565, at *10 (S.D.N.Y. Jan. 23, 2015) (approving fees for time spent, *inter alia*, preparing pleadings prior to the commencement of the action, discovery, discovery disputes, summary judgment motions, and a damages inquest).   Here, the Note's

reimbursement provision is broad and permits Plaintiff to recover attorneys' fees incurred not only for the litigation itself, but also pre-litigation attempts to enforce the agreement. (Note § 12.2 (providing for recovery of all reasonable out-of-pocket costs, expenses and fees for "the enforcement of the Noteholder's rights hereunder and under the Security Agreement (but not including the negotiation, documentation and execution of this Note.").)

The time records submitted reflect that Plaintiff's attorneys worked an approximate total of 65 hours, while the paralegal accumulated approximately 8 hours.[10]  (Petrakov Decl. ¶ 6.)  The Court has reviewed the records and finds the time spent to be reasonable. The work performed was related to enforcing Plaintiff's rights under the Note and included, for example, drafting demand notices for payment and turnover of collateral, negotiations with Defendants with respect to the dispute, pre-litigation tasks, and tasks associated with the ongoing lawsuit.  The hours spent, broken down by each individual and supported by contemporaneous documentation, were all reasonably necessary for the litigation of Plaintiff's claims.  The attorney with the highest billing rate among the three accounts for less than three of the hours; the vast majority of work (almost 60 hours) was performed by the attorney with an intermediate rate of $400-420 per hour, indicating that work was appropriately delegated.

Having determined that the fees sought are reasonable, the Court finds that Plaintiff should be awarded fees of $27,640.50.

---

[10] The total time spent on the matter by attorneys and a paralegal totals 72.9 hours.

### D.    Costs

Plaintiff seeks $1,075 in costs and has submitted copies of receipts and checks paid representing expenses incurred for filing fees, services of process fees, and other miscellaneous court fees.  (FFCL at 7; Yoshii Decl. ¶ 24; Petrakov Decl. ¶ 24, Ex. B.)  Those expenses are routinely recoverable.  *See e.g.*, *Malletier v. Artex Creative International Corp.*, 687 F. Supp.2d 347, 365 (S.D.N.Y. 2010) (costs such as filing fees, shipping costs, and research fees are "typically awarded when a defendant defaults") (citing *Arbor Hill*, 369 F.3d at 98); *Tips Exports, Inc. v. Music Mahal, Inc.,* No. 01-CV-5412, 2007 WL 952036, *11 (E.D.N.Y. Mar. 27, 2007) (reimbursing plaintiff for process servers and postage); *Shannon v. Fireman's Fund Insurance Co.,* 156 F. Supp.2d 279, 305 (S.D.N.Y. 2001) (reimbursing plaintiff for filing fees and shipping costs).  Costs associated with copying, docket fees, and other miscellaneous fees may also be recovered pursuant to Local Civil Rule 54.1.

The Court has reviewed Plaintiff's submissions and finds the costs set forth are recoverable.  Accordingly, Plaintiff should be awarded $1,075 in costs.

## CONCLUSION

For the foregoing reasons, I recommend awarding Plaintiff: (a) contract damages totaling $1,297,509.54 (comprised of $1,167,175 in outstanding principal, and $130,334.54 in unpaid accrued interest); (b) prejudgment interest at the statutory rate of 9% to be calculated by the Clerk of Court; (c) reasonable attorneys' fees in the amount of $27,640.50; and (d) costs in the amount of $1,075.

**OBJECTIONS AND APPEAL**

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules Of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report And Recommendation.  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the Chambers of the Honorable Lewis J. Liman, United States Courthouse, 500 Pearl Street, New York, New York 10007, and to the Chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York 10007.  **Failure to file timely objections will result in a waiver of objections and will preclude appellate review.**

Respectfully Submitted,

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: September 27, 2021
          New York, New York

Copies transmitted this date to all counsel of record.